UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TROY BRADLEY, )<br>)<br>)<br>Defendant. ) | Docket no. 09-CR-191-P-S |

**ORDER ON MOTION TO SUPPRESS**

Before the Court is Defendant's Motion to Suppress Evidence (Docket # 8). The Court held a hearing on the Motion on April 1, 2010. Having considered the evidence presented at the hearing, as well as the arguments advanced by counsel, the Court DENIES the Motion for reasons stated herein.

**I.   RELEVANT FACTS**

In late August 2008, the Lewiston Police Department ("LPD"), working in conjunction with Central Maine Violent Crimes Task Force ("Task Force"), began an investigation into a burglary of Pine Tree Trading, a federally licensed firearms dealer in Lewiston, Maine. Pine Tree Trading had reported that fourteen firearms were stolen during a burglary of the store. Special Agent Christopher Durkin ("S/A Durkin") of the Bureau of Alcohol, Tobacco, Forearms and Explosives ("ATF") was then working as part of the Task Force and became the primary federal investigator. Detective Trevor Campbell, another member of the Task Force, was the lead investigative officer for the LPD.

On September 6, 2008, members of the Task Force received information from Michael Hatch, who at the time was a primary suspect in the Pine Tree Trading burglary, implicating

Defendant Troy Bradley ("Defendant" or "Bradley").  Bradley and Hatch worked together at a restaurant in the Auburn area. As a result of this information, Detective Campbell asked Sergeant David St. Pierre to approach Bradley at work and bring him to the police station for questioning. Bradley agreed to be transported to the police station for questioning and thereafter was transported to the Lewiston Police Department in an unmarked police cruiser.  By the time Bradley arrived at the station, it was late at night.

Once at the station, Bradley's cell phone was taken away and he was asked to sit in an interview room.  The interview room was a ten-foot by ten-foot windowless room with a table and four chairs.  Significantly, each interview room contains video equipment.  This equipment allows other persons outside the interview room to observe interviews as they are being conducted.  The equipment also allows for someone outside the room to begin recording the interview unbeknownst to anyone inside the room.

Once Bradley was in the interview room, Task Force Officer David Levesque appeared, wearing plain clothes and blue latex gloves.[1]  He had just returned from Hatch's home.  Also in the interview room at that time was a large duffel bag containing approximately ten stolen firearms that police had confiscated from Michael Hatch.

S/A Durkin arrived at the interview room shortly thereafter, identified himself and showed Bradley his credentials.  He then read Bradley a Miranda warning off of his Statement of Rights card (Gov't Ex. 1) and Bradley indicated he understood his rights.[2]  S/A Durkin then shut the door to the interview room and sat down.  A video recording of Bradley's interview (Gov't Ex. 2) begins as S/A Durkin is completing the process of providing Bradley with a Miranda

---

[1] Officer Levesque testified that he was wearing latex gloves because he had been handling the confiscated firearms and that the gloves prevent the transfer of DNA and/or fingerprints.  He did not remove the gloves because he intended to complete the process of logging the firearms as evidence once the interview was over.

[2] The Court notes that the testimony of all three officers establishes that Bradley received a Miranda warning at this time and that the officers' testimony on this critical issue is further corroborated by what can be seen at the very beginning of the video (Gov't Ex. 2).

2

warning.  The video is time stamped as starting at 10:53 PM.  In the beginning of this video, Bradley indicated in response to a question from S/A Durkin that he had come to the interview voluntarily.

Although S/A Durkin and Officer Levesque were aware that their interview was being observed by other detectives, including Detective Campbell, they were unaware that a recording was being made.  On the video, you can see that the interview takes place with both officers sitting on one side of the table and Bradley sitting across from them.  During the initial questioning, Bradley admitted owning a shotgun that he purchased from Pine Tree Trading.  In response to questions from S/A Durkin, Bradley also admitted seeing firearms during a visit to Hatch's house.  Officer Levesque then indicated to Bradley that they wanted to talk to him about the ten guns they had in the bag and accused Bradley of having the other four stolen guns.  In response, Bradley repeatedly denied having any guns besides his .12 gauge shotgun.

A little more than three minutes into the interview, S/A Durkin remarks that Bradley appears "extremely nervous."  S/A Durkin then explains that Bradley has been implicated in a burglary of Pine Tree Trading and that they have evidence to present to a grand jury, which could decide to indict him.  In response (at approximately four and a half minutes into the video), Bradley asks: "If someone is implicating me, should I have a lawyer?"  S/A Durkin then replied: "That's entirely up to you."  The interview continued with S/A Durkin explaining the nature of the federal investigation and the potential benefits of Bradley cooperating.  S/A Durkin again noted that Bradley was showing multiple signs of being nervous; in response, Bradley said his nervousness was because the officers were "two big cops."  S/A Durkin then indicated a willingness to open the door and said explicitly that he was not trying to threaten or intimidate Bradley.  Both officers continued to ask Bradley questions and Bradley continued to respond by denying any involvement in the burglary or possession of any of the stolen firearms.

Approximately ten minutes into the videotaped portion of the interview, Bradley asks for the first time if he is free to leave. Shortly thereafter, Officer Levesque is seen abruptly leaving the room, taking the bag of firearms with him. At that point, Bradley and S/A Durkin remained in the interview room with the door open and S/A Durkin indicated that Bradley was "absolutely free to leave." Bradley then indicated that he wished to leave and return to work. S/A Durkin responded that he would arrange for a ride and the return of Bradley's cell phone.[3] In the short conversation that followed, S/A Durkin acknowledged that Bradley appeared to have "calmed down" and Bradley indicated that the presence of Officer Levesque had made him nervous. Bradley continued to deny any involvement in the theft of firearms from Pine Tree Trading.

At approximately thirteen minutes into the video, Bradley makes his second request to leave. S/A Durkin again indicated that Bradley could leave and that Bradley's phone would be returned to him. S/A Durkin then left the interview room and had no further interaction with Bradley in the interview room. At the hearing, S/A Durkin and Officer Levesque both testified that neither of them recalled Bradley making any incriminating statements during this portion of the interview and both officers emerged with the impression that Bradley "didn't want to talk."

Based on the video, it appears that Bradley spends the next two minutes alone in the interview room with the door open. During that time, S/A Durkin indicated to Detective Campbell that he was done talking with Bradley. Following that conversation, Detective Campbell entered the interview room with Bradley's phone.

After introducing himself and closing the door, Detective Campbell summarized his investigation and indicated to Bradley that he had been implicated in the Pine Tree Trading burglary. During the interview with Detective Campbell, Bradley indicated that he had given Michael Hatch a ride home on the night of the Pine Tree Trading burglary. Bradley attempted to

---

[3] There was also some discussion of Bradley's shotgun, which was apparently also brought to the station. Bradley indicated he would leave the station without the gun.

4

confirm that fact that by checking on his cell phone. However, Bradley denied involvement in the burglary. Bradley also expressed concern that he needed to leave at that point because he was subject to a curfew. Approximately nineteen minutes into the video and only four minutes into the interview with Detective Campbell, Bradley again indicates that he wants to leave. At that point, Detective Campbell told Bradley that he would not be allowed to leave and would be placed under arrest. In response (approximately twenty minutes into the video), Bradley unequivocally asks for counsel and Detective Campbell immediately ceases his interview and leaves the interview room. Bradley then sought clarification on his ability to leave from officers in the hallway but was told to wait in the interview room with the door closed and was also told that he was going to be taken to jail.

A few minutes later (twenty-seven minutes into the video), a uniformed police officer arrives in the interview room and arrests Bradley. At the hearing, Detective Campbell testified that, although he believed he had probably cause to arrest Bradley prior to entering the interview room on the night of September 6, 2008, he did not make the decision to arrest Bradley until he was "all done" questioning Bradley.

## II.     ANALYSIS

Defendant's Motion to Suppress seeks to suppress all of the statements he made at the police station on the night of September 6, 2008. The sole basis for seeking to suppress these statements was an assertion that Bradley was subjected to a custodial interrogation without a Miranda warning. The Government provided a two-prong response arguing (1) that no Miranda warning was required because Bradley was not subjected to a custodial interrogation on September 6, 2008 and (2) that the Government could in fact prove that a Miranda warning had been given.

As indicated in the above factual narrative, the Government has met its burden of proving that Defendant was given a Miranda warning by S/A Durkin and voluntarily waived his Miranda rights. See Missouri v. Seibert, 542 U.S. 600, 608-09 & n.1 (2004). Given the strength of the evidence on this point, the Court need not decide whether the totality of the circumstances surrounding Bradley's late night interview at the police station would cause a reasonable person to believe he was "in custody." United States v. Pagan-Santini, 451 F.3d 258, 263 (1st Cir. 2006) (explaining that the key inquiry is whether "a reasonable person would believe he is 'in custody' under the circumstances"); United States v. Trueber, 238 F.3d 79, 93 (1st Cir. 2001). Rather, the Court assumes, without deciding, that the September 6, 2008 interview qualified as a custodial interrogation.

To the extent that the video evidence provided to the Court might raise any other issues with respect to the September 6, 2008 interview of Defendant, the Court notes that Defendant has forfeited those issues and pressed only the question of whether a Miranda warning was required and provided.

SO ORDERED.

                                               /s/ George Z. Singal  
                                               United States District Judge

Dated this 9th day of April, 2010.